LITCHFIELD v. BUFFALO, R. & P. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

1. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—FELLOW SERV-
ANTS.
   Where deceased and his fellow servants were set at work to make
   an excavation under a railway track, and the place in which they were
   to work was safe, and everything was provided that was needful
   to keep it in that manner, and a competent foreman was provided, and
   the conditions, the character of the soil, and the manner in which the
   tracks above were used were all apparent, if it became unsafe so that
   deceased was killed it was caused by negligence of deceased or his
   fellow servants, and it was immaterial that the accident occurred after
   the excavation was completed, and deceased had remained to assist
   the masons in constructing a culvert.

2. SAME—SAFE PLACE TO WORK.
   As far as the men who made the excavation were concerned, the law
   as to a safe place to work did not apply, as they created the place.

Appeal from trial term, Cattaraugus county.

Action by Royal S. Litchfield, administrator of Matthew Murphy,
deceased, against the Buffalo, Rochester & Pittsburgh Railway Com-
pany. From a judgment for plaintiff, and from an order denying new
trial, defendant appeals. Reversed.

The action was commenced on the 5th day of November, 1897, to
recover damages sustained by the heirs and next of kin of the plain-
tiff's intestate on account of his death, alleged to have been caused
through the negligence of the defendant, and without any fault or con-
tributory negligence on his part.

Argued before McLENNAN, WILLIAMS, HISCOCK, and
DAVY, JJ.

James S. Havens, for appellant.
George E. Spring, for respondent.

McLENNAN, J. Plaintiff's intestate was killed on the 6th day of
November, 1896, while in the employ of the defendant, assisting as
mason's helper in constructing a stone culvert at the bottom of an
excavation which he had helped to make, and which extended across
the embankment of defendant's railroad near the village of Warsaw,
N. Y., by the caving in and falling upon him of a quantity of earth
from one side of the excavation. At the place in question the railroad
ran upon an embankment about 10 feet high, which was 10 feet wide
on the top, and about 30 feet in width at the bottom. It became
necessary to make a cut or ditch about 11 feet wide entirely across
such embankment, extending from the top to the bottom, for the pur-
pose of removing an old stone culvert located at the bottom which
was out of repair, and to replace it with a new structure. Preparatory
to making such excavation four piles were driven from the top of
the embankment, and extending to the bottom upon each side of
the proposed cut. Upon the piles substantially a bridge was con-
structed by fastening stringers to them, which extended across the
place where the excavation was to be made, and into the bank upon
either side for a distance of 12 feet. This was done for the purpose

of enabling trains to be operated during the progress of the proposed work. The framework or bridge was constructed by employés of the defendant called the "carpenter gang," and there is no evidence which indicates that this part of the work was not properly done. When the so-called "bridge" was completed, and trains were being run upon it, the excavating gang, of which plaintiff's intestate was one, commenced removing the earth from the space between the two rows of piles, and continued from day to day until the entire excavation was completed, the sides of which were left flush with the piles, and substantially perpendicular from top to bottom. The excavating was done by plaintiff's intestate and his associates under the direction of a competent foreman, and no accident occurred during the progress of that work. Suitable sheathing or material for shoring up the banks of the excavation was furnished by the defendant, and was where it could have been obtained by the foreman of the defendant if he desired it or deemed it necessary, for the use of the excavating gang, and they might have spiked plank onto the piles, or taken such other precaution as would have effectually prevented the earth from either bank from caving into the excavation. Nothing of the kind, however, was done by the excavating gang, the plaintiff's intestate, or his co-employés, and the excavation was completed as indicated. At the time of the accident the excavating had all been completed, and the masons had been engaged in laying the new culvert for nearly two days. Six of the excavating gang, including plaintiff's intestate, remained to assist the masons, and were so engaged when one of the sides of the excavation caved in, a large quantity of the earth falling upon plaintiff's intestate, and he sustained injuries from which he died almost immediately. The evidence indicates that the caving in of the side of the excavation was caused by the jarring of the earth by the passing of heavy trains above.

It is clear that, if plaintiff's intestate had sustained the injuries which caused his death while engaged in excavating the trench in question, the defendant would not have been liable, for the reason that the deceased, together with his co-employés, created the dangerous situation, if it existed, which caused the accident, by not shoring up or sheathing the sides of the excavation as the work progressed. When the deceased and his fellow servants were set at work to make the excavation there was no danger, the place in which they were to work was perfectly safe, and everything was done by the master which was necessary or needful to keep it in that condition. A competent and experienced foreman was provided. Suitable material could have been obtained by him with which to make the trench an absolutely safe place in which to work as the excavating progressed. The conditions were all apparent,—the character of the soil, the width and depth of the trench, and the manner in which the tracks above were to be used. If, under those circumstances, the trench became dangerous and accident resulted, it was caused by the negligence of the deceased or of his co-employés, and therefore the defendant would not have been liable therefor.

The trench, so far as the excavating gang was concerned, was not a place in which to work furnished by the master, but was made by

the deceased and his co-employés for themselves, and was a detail
of the general work undertaken by the defendant; therefore the law
as to safe place does not apply.   Perry v. Rogers, 157 N. Y. 251, 51
N. E. 1021;  Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017;
De Vito v. Crage, 165 N. Y. 378, 59 N. E. 141;  Golden v. Sieghardt,
33 App. Div. 161, 53 N. Y. Supp. 460;  Simone v. Kirk, 57 App. Div.
461, 67 N. Y. Supp. 1019.

The fact that at the time of the accident plaintiff's intestate had
finished his work as a member of the excavating gang, and was assist-
ing the masons in laying the culvert in the trench which he and his
associates had made, does not render the defendant liable.   If the
deceased had commenced work in the trench as a mason's helper, and
had not with his associates constructed it, the law of safe place would
apply, and, if the accident had resulted because of the negligent con-
struction of the trench, undoubtedly the defendant would have been
liable.   Eichholz v. Power Co., 68 App. Div. 441, 73 N. Y. Supp.
842.   But in the case at bar, as we have seen, if the place in which
the plaintiff's intestate was working at the time of the accident was
unsafe, it was because of the negligence of plaintiff's intestate or of
his co-servants in making it.   If one class of servants negligently
constructs an unsafe place for another class of servants to work in,
one of the first class cannot recover from the master for injuries sus-
tained by him, caused by such negligence, while working in such place,
although at the time he may have joined the other class of servants,
and with them was engaged in doing work in no manner connected
with preparing the place to work in.   It follows that the judgment and
order appealed from should be reversed, and a new trial granted, with
costs to the appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs
to the appellant to abide event.   All concur.

Judgment and order reversed upon questions of law only, the facts having
been examined, and no error found therein, and new trial ordered, with costs
to the appellant to abide event.