DETERMINED IN THE

# FOURTH DEPARTMENT

IN THE

## APPELLATE DIVISION,

### May, 1902.*

ROYAL S. LITCHFIELD, as Surviving Administrator, etc., of MATTHEW MURPHY, Deceased, Respondent, *v.* BUFFALO, ROCHESTER AND PITTSBURGH RAILWAY COMPANY, Appellant.

*Negligence — injury from the caving in of an unsecured bank of an excavation — the master is not liable where sheathing material was provided for the foreman — the rule that the master must provide a safe place does not apply to one who digs the ditch and remains to help the masons — it would apply in favor of the masons.*

In an action to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant, whose railroad ran upon an embankment, desired to remove a stone culvert located at the bottom of the embankment and to replace it with a new structure, and that, in the performance of the work, it was necessary to cut a ditch entirely across the embankment which was ten feet high. Preparatory to digging the ditch a row of piles was driven across the embankment from the top to the bottom, upon each side of the proposed cut, and upon these piles a temporary bridge was built in order that trains might be operated during the progress of the work. After the bridge had been constructed by employees of the defendant, called the carpenter gang, and while trains were being operated upon it, the excavating gang, of which the intestate was one, dug the ditch between the two rows of piles, leaving the sides flush with the piles and substantially perpendicular from top to bottom, without taking any precaution to prevent them from caving in. Upon the completion of the ditch, part of the excavating gang, including the intestate, were retained to assist the masons engaged in laying the new culvert. After they had been so engaged for nearly two days, one of the sides of the excavation caved in, in consequence of the jarring of the earth caused

* The other cases of this term will be found in volume 72 App. Div.— [REP.

APP. DIV.—VOL. LXXIII.      1

by the passing of heavy trains, and the intestate was crushed to death by the falling earth.

It appeared that the work of excavation was performed under the direction of a competent foreman, and that the defendant had furnished material suitable for sheathing or shoring up the banks of the excavation, and that the foreman might have obtained such material if he desired it or deemed it necessary.

*Held,* that a judgment in favor of the plaintiff should be reversed;

That, as the trench had been made by the excavating gang in the performance of their work and had not been furnished by the defendant, so far as the excavating gang was concerned, as a place for its members to work in, the defendant would not be liable to any of the excavating gang for injuries resulting from the fact that it was not a safe place in which to work;

That, as the intestate had been a member of the excavating gang, the defendant was not liable for the injuries sustained by him, notwithstanding the fact that, when the accident happened, he was assisting the masons.

*Semble,* that if the intestate had commenced work in the trench as a mason's helper, and had not assisted in its construction, the law imposing upon a master the duty of providing a safe place would have applied.

APPEAL by the defendant, the Buffalo, Rochester and Pittsburgh Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 27th day of May, 1901, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the 5th day of July, 1901, denying the defendant's motion for a new trial made upon the minutes.

The action was commenced on the 5th day of November, 1897, to recover damages sustained by the heirs and next of kin of the plaintiff's intestate on account of his death, alleged to have been caused through the negligence of the defendant, and without any fault or contributory negligence on his part.

*James S. Havens,* for the appellant.

*George E. Spring,* for the respondent

McLENNAN, J.:

Plaintiff's intestate was killed on the 6th day of November, 1896, while in the employ of the defendant, assisting as mason's helper in constructing a stone culvert at the bottom of an excavation which he had helped to make, and which extended across the embankment of defendant's railroad near the village of Warsaw, N. Y., by the caving in and falling upon him of a quantity of earth from one side of the excavation.

At the place in question the railroad ran upon an embankment about ten feet high, which was ten feet wide on the top and about thirty feet in width at the bottom. It became necessary to make a cut or ditch about eleven feet wide entirely across such embankment, extending from the top to the bottom, for the purpose of removing an old stone culvert located at the bottom which was out of repair, and to replace it with a new structure. Preparatory to making such excavation four piles were driven from the top of the embankment, and extending to the bottom upon each side of the proposed cut. Upon the piles substantially a bridge was constructed by fastening stringers to them which extended across the place where the excavation was to be made, and into the bank upon either side for a distance of twelve feet. This was done for the purpose of enabling trains to be operated during the progress of the proposed work. The framework or bridge was constructed by employees of the defendant called the " carpenter gang," and there is no evidence which indicates that this part of the work was not properly done.

When the so-called bridge was completed and trains were being run upon it, the excavating gang, of which plaintiff's intestate was one, commenced removing the earth from the space between the two rows of piles, and continued from day to day until the entire excavation was completed, the sides of which were left flush with the piles, and substantially perpendicular from top to bottom. The excavating was done by plaintiff's intestate and his associates under the direction of a competent foreman, and no accident occurred during the progress of that work. Suitable sheathing or material for shoring up the banks of the excavation was furnished by the defendant, and was where it could have been obtained by the foreman of the defendant if he desired it or deemed it necessary for the use of the excavating gang, and they might have spiked plank onto the piles or taken such other precaution as would have effectually prevented the earth from either bank from caving into the excavation. Nothing of the kind, however, was done by the excavating gang, the plaintiff's intestate or his co-employees, and the excavation was completed as indicated.

At the time of the accident the excavating had all been completed, and the masons had been engaged in laying the new culvert

for nearly two days. Six of the excavating gang, including plaintiff's intestate, remained to assist the masons, and were so engaged when one of the sides of the excavation caved in, a large quantity of the earth falling upon plaintiff's intestate, and he sustained injuries from which he died almost immediately. The evidence indicates that the caving in of the side of the excavation was caused by the jarring of the earth by the passing of heavy trains above.

It is clear that if plaintiff's intestate had sustained the injuries which caused his death while engaged in excavating the trench in question, the defendant would not have been liable, for the reason that the deceased together with his co-employees created the dangerous situation, if it existed, which caused the accident, by not shoring up or sheathing the sides of the excavation as the work progressed.

When the deceased and his fellow-servants were set at work to make the excavation there was no danger; the place in which they were to work was perfectly safe, and everything was done by the master which was necessary or needful to keep it in that condition. A competent and experienced foreman was provided; suitable material could have been obtained by him with which to make the trench an absolutely safe place in which to work as the excavating progressed. The conditions were all apparent; the character of the soil, the width and depth of the trench, and the manner in which the tracks above were to be used. If, under those circumstances, the trench became dangerous and accident resulted, it was caused by the negligence of the deceased or of his co-employees, and, therefore, the defendant would not have been liable therefor.

The trench, so far as the excavating gang was concerned, was not a place in which to work furnished by the master, but was made by the deceased and his co-employees for themselves, and was a detail of the general work undertaken by the defendant; therefore, the law as to safe place does not apply. (*Perry* v. *Rogers*, 157 N. Y. 251; *Butler* v. *Townsend*, 126 id. 105; *Di Vito* v. *Crage*, 165 id. 378; *Golden* v. *Sieghardt*, 33 App. Div. 161; *Simone* v. *Kirk*, 57 id. 461.)

The fact that at the time of the accident plaintiff's intestate had finished his work as a member of the excavating gang, and was assisting the masons in laying the culvert in the trench which he

and his associates had made, does not render the defendant liable. If the deceased had commenced work in the trench as a mason's helper, and had not with his associates constructed it, the law of safe place would apply, and if the accident had resulted because of the negligent construction of the trench, undoubtedly the defendant would have been liable. (*Eichholz* v. *Niagara Falls Hydraulic Power & M. Co.*, 68 App. Div. 441.) But in the case at bar, as we have seen, if the place in which the plaintiff's intestate was working at the time of the accident was unsafe, it was because of the negligence of plaintiff's intestate or of his coservants in making it.

If one class of servants negligently constructs an unsafe place for another class of servants to work in, one of the first class cannot recover from the master for injuries sustained by him, caused by such negligence, while working in such place, although at the time he may have joined the other class of servants, and with them was engaged in doing work in no manner connected with preparing the place to work in.

It follows that the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

WILLIAMS, HISCOCK and DAVY, JJ., concurred; SPRING, J., not sitting.

Judgment and order reversed upon questions of law only, the facts having been examined and no error found therein, and new trial ordered, with costs to the appellant to abide event.