# Zeskie, Appellant, v. Pennsylvania Coal Company.

*Negligence—Master and servant—Coal mine—Brakeman—Dangerous employment—Inexperienced workman—Failure to instruct.*

1. It is the duty of the employer when the employee is engaged in dangerous work to instruct not only the young but also the inexperienced adult person.

2. In an action by an employee against a coal company for damages for personal injuries suffered by the plaintiff while working

as a brakeman in defendant's mine, the questions of defendants' negligence and plaintiff's contributory negligence are for the jury where it appears that the plaintiff had been employed by the defendant company in its coal mine as a door tender and driver for several years prior to the accident, but that on the day before the accident his employment was changed to that of a brakeman on the compressed air motor which was used in hauling cars in the mine; that he had been informed on that day that the man who ran the motor would show him what to do; that the latter told him that his duties would comprise among other things sanding the track and that when he was so doing he should sit upon the bumpers of the motor, without instructing him as to the manner of sanding the track or warning him as to the dangers to be incurred when performing the service and how to avoid them; that while so engaged he was injured by a collision between the motor upon the bumpers of which he was riding and some empty cars left standing on the track; that it was the duty of a stationary engineer to give notice of an obstruction on the track and that immediately before the accident the latter had indicated that the track was clear; and it also appears from the testimony that the only practicable way the work of sanding the track could be done was that adopted by the plaintiff, and the latter testified that he had seen others sanding the tracks while sitting on the front bumpers and had never seen the work done in any other way, and also that he had never performed such services and had no knowledge of the safe and proper way to do the work or that the way adopted was dangerous.

Argued April 14, 1913. Appeal, No. 417, Jan. T., 1912, by plaintiff, from order of C. P. Luzerne Co., Oct. T., 1910, No. 450, refusing to take off nonsuit in case of Joseph Zeskie v. Pennsylvania Coal Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before O'BOYLE, J.

The opinion of the Supreme Court states the case.

*Error assigned* was in entering and refusing to take off nonsuit.

*T. R. Martin,* with him *Rush Trescott,* for appellant.

*John McGahren,* with him *Warren, Knapp & O'Malley* and *Reese H. Harris,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1913:

This is an action by an employee against his employer to recover damages for personal injuries. It appears from the plaintiff's testimony that he was employed by the defendant company in its coal mines for several years prior to the date of the accident which occurred on June 30, 1909. He had been a door tender and a mule driver, but on the day before the accident his employment was changed to that of a brakeman on the compressed air motor which was used in hauling the cars from the foot of the shaft to and from the slopes in the mine. On that day, he was sent by the mine foreman into the mine and told that Bryden, the man who ran the motor, would show him what to do. The plaintiff entered the mine, and Bryden told him that his duties would consist of turning the switches, coupling and uncoupling the cars and sanding the track. He also told him that when he was sanding the track he should sit on the bumpers on the motor.

On the day after his employment as a brakeman the motor with thirty-seven empty cars attached started from the foot of the shaft to Slope No. 2, about three thousand feet distant. When it arrived at Slope No. 1, the plaintiff, by direction of Bryden, uncoupled twenty-two of the cars on the rear end of the train and left them standing there to be taken into the slope by another employee. The motor with the fifteen cars then proceeded to Slope No. 2, where it was detached from the cars and attached to a train of twenty-one loaded cars to be taken over the same track to the foot of the shaft. When the motor was approaching the head of Slope No. 1 it gave the usual signal of inquiry whether the road was clear of the empty cars which had been

left there, and an affirmative answer was given by the engineer whose duty it was to perform the service. As the loaded trip was returning from Slope No. 2 the plaintiff was sitting on the front bumper of the motor sanding the track. By the fault of some one, two of the empty cars which had been left at the head of Slope No. 1 had not been removed, and a collision took place between them and the motor, resulting in serious injury to the plaintiff.

This action was brought to recover damages for the injuries sustained by the plaintiff in the collision between the motor and the empty cars. The learned court below granted a nonsuit, which it subsequently refused to take off, on the ground that the plaintiff had failed to establish negligence on the part of the defendant, and was guilty of contributory negligence which was the efficient cause of his injuries. The plaintiff has taken this appeal.

The statement avers several negligent acts which the plaintiff alleges caused his injuries, one of which is that the defendant "did negligently fail to give plaintiff reasonable and proper instructions in the duties and dangers of his position." When the plaintiff was assigned to duty by his employer, he was sent to Bryden and told that the latter would direct him what to do. He saw Bryden, who told him to sit on the bumper while sanding the track. This is the testimony of both the plaintiff and Bryden. It further appears from the plaintiff's testimony that he was not instructed as to the manner of sanding the track nor warned as to the dangers to be incurred in performing the service and how to avoid them. In fact, no instructions whatever were given him except that he should sit on the bumper while doing the work. The plaintiff had been engaged for several years as door tender and mule driver in the defendant's mines, but he had never worked on or about a motor, and testified that he did not know that it was dangerous to sit on the bumper while sanding the track. It also appears

from his testimony that that was the only way the work could be done so as to enable the motorman to handle the requisite number of cars during the day. Both the plaintiff and his witness testified positively that all the cars could not have been handled if the plaintiff had sanded the track by walking in front of the motor. From the testimony, therefore, the jury would have been warranted in finding that the plaintiff was directed by his employer to sit on the bumper while sanding the track and that the motorman could not handle the cars if the track was sanded by a person walking in front of the motor.

The plaintiff testified that prior to his employment as brakeman, he had seen others sanding the track while sitting on the front bumper and had never seen the work done in any other way. He also testified that he had never performed such service and had no knowledge of the proper and safe way to do the work. The testimony of both parties shows that sanding the track while sitting on the bumper in front of the motor is dangerous, and if the plaintiff was ignorant of the fact and of the proper way to perform the service, it was the duty of the employer to give him proper instructions as to the danger and the means of escaping it as far as possible. The court could not declare as a matter of law, under the evidence in the case, that the work was not dangerous or that the plaintiff was familiar with the work and its dangers by reason of his long employment in other capacities in the mine, and that, therefore, no instructions to him were necessary. If the jury should find that the work was dangerous, that the plaintiff had no knowledge of the dangers incident to the service and the means by which the dangers could be avoided, and that no instructions were given to the plaintiff, the defendant would be guilty of actionable negligence and liable for any injury resulting therefrom.

In holding the plaintiff guilty of contributory negligence as matter of law, the learned court clearly misap-

prehended the effect of the testimony introduced on his behalf. It is true that he was at the time of the accident about twenty-two years of age and had continuously been employed in the mine at various kinds of work for several years. It is also doubtless true that he frequently saw the motor hauling both empty and loaded cars. These facts, however, did not necessarily familiarize him with the operation of the motor or the dangers incident to riding on the bumper. He was examined at length by the defendant's counsel as to whether he did not know that it was dangerous to ride on the bumper by reason of there being some obstruction on the track, such as a car, fall of slate or coal. He replied that he "was not on the job long enough to know it." He testified that he was required to turn the switches, couple and uncouple cars and assist in charging the motor, and that the time occupied in the performance of these duties made it imperative that he should ride on the bumper while sanding the track. It also appeared from his and Bryden's testimony that he could not carry the quantity of sand required to sand the track and that it had to be carried in boxes on the bumper. In other words the testimony, if believed, would warrant the finding that the service expected of the plaintiff required him to ride on the bumper while sanding the track. In addition to this, the plaintiff was directed to sit on the bumper while he was doing the work. It is not clear that the danger of riding on the bumper while sanding the track was so inevitable or imminent that the court could declare the plaintiff guilty of negligence. The manner of performing the service was not optional with the plaintiff and, therefore, the fact suggested by the learned court below, that he knew that the duty of sanding the track could be safely performed without riding on the motor does not convict him of negligence. He assumed the risks necessarily incident to the performance of the duty, but he did not assume the risk of the negligence of his employer.

Neither does the law declare him negligent because he performed the service for which he was employed in the manner directed by his employer, as the danger was not imminent.

We think the plaintiff's negligence and the defendant's contributory negligence were both for the jury. If the jury should find that it was the duty of the defendant company to instruct the plaintiff and that the failure to perform this duty was the proximate cause of his injuries, and that the plaintiff was free from negligence himself, he would be entitled to a verdict. We think the case in hand is similar to Smith v. Coal and Iron Company, 186 Pa. 28. The distinction sought to be made by the learned trial judge is not well taken. It is true that in the Smith case the plaintiff was a minor, and he testified he did not know it was dangerous to ride on the bumper and the cars with which he collided were not placed on the track by him. But these facts do not distinguish the cases. It is the duty of an employer when the employee is engaged in a dangerous service to instruct not only the young person but also the inexperienced adult person. In the present case, the plaintiff testified that he did not know that it was dangerous to ride on the bumper. It was the duty of the stationary engineer to give notice of any obstruction on the track, and that notice having been given by him, the plaintiff had the right to assume that the track was clear. It is true that one riding on the bumper might be injured by a collision with cars on the track or a fall of slate or some other obstruction, but this was a contingency that did not make the position on the bumper so imminently dangerous that one performing the service could be declared guilty of negligence as a matter of law.

The second and third assignments are sustained and the judgment is reversed with a procedendo.